IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**JOHN DANE,**

        Petitioner,

v.                                  **CIVIL ACTION NO. 5:24-CV-157**
                                                 Judge Bailey

**MELISSA BAYLESS,**

        Respondent.

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On August 13, 2024, the *pro se* petitioner, John Dane ("petitioner") filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, [Doc. 1], along with the $5 filing fee. Petitioner is a federal inmate who is housed at FPC Morgantown in Morgantown, West Virginia, and is challenging the Bureau of Prisons' ("BOP") calculation of time credits under the First Step Act. On September 24, 2024, the respondent filed a Motion to Dismiss. [Doc. 11]. On October 10, 2024, the petitioner filed a response, [Doc. 15], and on October 24, 2024, the respondent filed a reply, [Doc. 16]. This matter is pending before the undersigned for an initial review and Report and Recommendation pursuant to LR PL P 2 and 28 U.S.C. § 1915A. For the reasons set forth below, the undersigned recommends that the Motion to Dismiss be granted and that the petition be denied and dismissed.

## II. BACKGROUND

### A.  Conviction and Sentence

On February 26, 2024, petitioner was convicted in the Eastern District of Virginia, pursuant to a plea agreement, to one count of smuggling goods into the United States in violation of 18 U.S.C. §§ 545 & 2 and one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) and was sentenced to a total term of 48 months imprisonment, to be followed by three years of supervised release.[1] As detailed in the respondent's memorandum in support of her motion to dismiss, petitioner was at that time in the custody of the United States Marshals Service and in a local jail.  On March 27, 2024, petitioner was transferred to FCI Petersburg in Petersburg, Virginia, a Bureau of Prisons ("BOP") facility, but at that time was classified as a "sentence holdover inmate" in the custody of the Marshals Service.  [Doc. 12 at 2]. Petitioner was transferred to two other BOP facilities before ultimately being transferred to FPC Morgantown in Morgantown, West Virginia, his "designated facility," on April 16, 2024.  [Id. at 3].  Under the BOP's current policy regarding eligibility to earn time credits under the First Step Act ("FSA"), petitioner became eligible to begin earning credits on April 16, 2024.

### B.  The Instant Petition for Habeas Corpus Under § 2241

In his petition, petitioner claims that the BOP is improperly denying him time credits under the FSA by deeming him eligible on April 16, 2024, when he arrived at his

---

[1] Taken from petitioner's criminal docket available on PACER.  See **USA v. Dane**, 2:23-CR-00104-EWH-DEM-1 (E.D. Va. 2024), **Philips v. Pitt Cnty. Mem. Hosp.**, 572 F. 3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); **Colonial Penn. Ins. Co. v. Coil**, 887 F.2d 1236, 21239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

"designated facility," rather than when his sentence commenced on February 26, 2024. Plaintiff argues that the BOP's regulation in 28 C.F.R. § 523.42(a), which defines commencement of sentence as of the date he arrives or surrenders at the "designated facility" for his sentence, contradicts the plain text of the First Step Act at 18 U.S.C. § 3632(d). That statute states that prisoners may not earn credits "prior to the date the prisoner's sentence commences under section 3585(a)." Section 3585(a), in turn, defines "commencement of sentence" more broadly to include "the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served."

On September 24, 2024, respondent filed a Motion to Dismiss, [Doc. 11]. In the memorandum in support, respondent argues that petitioner was not eligible to begin earning credits under the First Step Act until April 16, 2024, the date petitioner arrived at FPC Morgantown, his "designated facility." Respondent argues that, although for a portion of the prior period petitioner was in BOP facilities, he was ineligible to earn credits because he was not in BOP custody until reaching his designated facility.

### III. LEGAL STANDARDS

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. ***Adams v. Bain***, 697 F.2d 1213, 1219 (4th Cir. 1982); ***Mims v. Kemp***, 516 F.2d 21 (4th Cir. 1975). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court

is free to weigh the evidence to determine the existence of its jurisdiction.  No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  See **Materson v. Stokes**, 166 F.R.D. 368, 371 (E.D. Va. 1996).  Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  See Fed. R. Civ. P. 12(h)(3).

**B.     Motion to Dismiss for Failure to State a Claim**

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is plausible on its face.' **Bell Atl. Corp. v. Twombly**, 550 U.S. 554, 570 (2007) (emphasis added)." **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs.  **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice.  **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995).  In **Twombly**, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Id. at 555, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." **Id**. at 570.

4

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." **Williams v. Branker**, 462 F. App'x 348, 352 (4th Cir. 2012).  "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." **Witthohn v. Fed. Ins. Co.**, 164 F. App'x 395, 396 (4th Cir. 2006).  However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint.  *Id*. at 396–97.

**C.    Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Anderson**, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts*.*" **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there

is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323–25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Anderson**, 477 U.S. at 249 (citations omitted).

Finally, this Court notes that *pro se* allegations are held to a less stringent standard than those drafted by lawyers and must be liberally construed. **Haines v. Kerner**, 404 U.S. 519, 520 (1972); **Hudspeth v. Figgins**, 584 F.2d 1345, 1347 (4th Cir. 1978).

## IV. ANALYSIS

Under 18 U.S.C. § 3632(d)(4), eligible prisoners who successfully complete evidence-based recidivism reduction ("EBRR") programming or productive activities ("PA") shall earn time credits at a rate of 10 days for every 30 days of successful participation in EBRR programming or productive activities.[2] However, a prisoner may not earn time credits for an evidence-based recidivism reduction program completed during official detention prior to the date that the prisoner's sentence commences under 18 U.S.C. § 3585(a). 18 U.S.C. § 3632(d)(4)(B)(ii).

The respondent contends that petitioner may not receive credit for time prior to April 16, 2024, "because Petitioner cannot earn credit for participation in approved BOP EBRR or PAs before he entered BOP custody." [Doc. 12 at 11]. The undersigned agrees with petitioner and a number of courts that have found that the BOP's definition of when a sentence "commences" is in conflict with the plain language of the FSA. "Commencement of sentence" is defined in section 3585:

---

[2] A prisoner shall earn an additional 5 days every 30 days if they have had two consecutive assessments where he is determined to be at a "low" or "minimum" risk for recidivating. 18 U.S.C. § 3632(d)(4)(A)(ii).

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody *awaiting transportation to*, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a) (emphasis added).  In contrast, the BOP's equivalent regulation is narrower:

> (a) When an eligible inmate begins earning FSA Time Credits. An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).

28 C.F.R. § 523.42(a).  Thus, while a prisoner's sentence would "commence" under 18 U.S.C. § 3585(a) when he is received in custody awaiting transportation to his designated facility and he would thus be eligible to earn credits under the language of section 3632(d)(4)(B)(ii), the BOP's policy would not permit the prisoner to earn credits until after he arrives at the designated facility.  A number of courts have found that the BOP's policy conflicts with the statute.  See ***Borker v. Bowers***[3], No. CV 24-10045-LTS, 2024 WL 2186742, at *2 (D. Mass. May 15, 2024) (finding that the regulation is at odds with the plain language of the statute); ***Wong v. Warden***, No. 4:24-CV-04117-CBK, 2024 WL 4027918, at *2 (D. S.D. Sept. 3, 2024) ("[I]n this case the BOP's final rule for the start date that an inmate may earn FSA Time Credits is contrary to Congress's directive that the BOP is required to 'provide all prisoners with the opportunity to actively participate in [EBRR] programs ... throughout their entire term of incarceration.' 18 U.S.C. § 2621(h)(6)."); ***Patel v. Barron***, No. C23-937-KKE, 2023 WL 6311281, at *5 (W.D. Wash.

---

[3] Both parties have discussed ***Borker*** in their briefs, and, in respondent's reply, the Warden notes that ***Borker*** had been appealed.  The undersigned notes that the appeal has since been voluntarily dismissed, and it appears that the parties stipulated to dismissal after petitioner was released from BOP custody.

7

Sept. 28, 2023) (finding that 28 C.F.R. § 523.42(a) directly conflicts with an unambiguous statute and that BOP was not entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (194))[4]; *Yufenyuy v. Warden, FCI Berlin*, 659 F. Supp. 3d 213, 218 (D.N.H. 2023) (same); *Sharma v. Peters*, No. 2:24-CV-158-RAH-KFP, 2024 WL 4668135, at *9 (M.D. Ala. Nov. 4, 2024) (evaluating 28 C.F.R. § 523.41 under the *Loper* standard and finding "the undersigned is not convinced that Sharma's purported inability to earn FTCs for which he was eligible was because he was housed outside of his designated facility."); *but see Stevens v. Jacquez*, No. 3:23-CV-01482-AA, 2024 WL 3200546, at *4 (D. Or. June 25, 2024) (finding that the policy conflicts with the plain language of the FSA but that petitioner could not show he successfully participated in programming); *Solberg v. Eischen*, No. 23-CV-3568, 2024 WL 3251713, at *2 (D. Minn. May 7, 2024), *report and recommendation adopted*, No. 23-CV-3568, 2024 WL 3086630 (D. Minn. June 21, 2024) (petitioner could not show he had participated in programming).

However, while the policy conflicts with the statute insofar as it defines "commencement of sentence" more narrowly than the statute, the undersigned agrees with the reasoning of the District of Oregon in *Stevens* that this does not mean the prisoner is entitled to an award of FSA time credit on the date he is received in federal custody:

> First, Petitioner's argument ignores the FSA requirement that an [adult in custody, ("AIC")] be assessed for the risk of recidivism "as part of the intake process." [18 U.S.C.] §§ 3621(h)(1)(A), 3632(a)(1) (the BOP must "determine the risk of recidivism of each prisoner as part of the intake process"). BOP must then "determine the type and amount of [EBRR]

---

[4] Since the *Patel* case, the Supreme Court has overruled *Chevron* in *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244 (2024); however, *Chevron* would imply more deference should be given to the BOP than *Loper* does.

8

> programming that is appropriate" for each AIC and "assign" appropriate EBRR programming and PAs based on its assessment of the AIC's "specific criminogenic needs." Id. § 3632(a)(3); see also id. § 3621(h)(1)(A). BOP must also try to "tailor the programs to the specific criminogenic needs of each prisoner so as to most effectively lower each prisoner's risk of recidivism." Id. § 3632(b)(2). As a practical matter, BOP cannot complete a comprehensive risk and needs assessment on the day of sentencing.
>
> Second, the application of FSA time credits is expressly conditioned on an AIC's "successful participation" in EBRR programming. *See* id. § 3632(d)(4)(A) (authorizing the application of time credits in exchange for "successful completion" or "successful participation in evidence-based recidivism reduction programming or productive activities"). Petitioner makes no showing that he successfully participated in EBRR programming to justify the FSA time credit he seeks. Instead, Petitioner appears to argue that he is entitled to time credit as of March 2, 2022 simply because he was sentenced and in federal custody as of that date. To the contrary, the FSA authorizes an award of time credits only if an AIC earns them by participating in EBRR programs. **Pierce v. LeMaster**, 2024 WL 439447, at *1 (E.D. Ky. Jan. 29, 2024) (stating that "generally speaking 'successful participating' requires, at a minimum, actual participation"); *see also* **Yufenyuy**, 659 F. Supp. 3d at 217-18 (explaining that FSA "provisions make it clear that prisoners 'shall' earn time credits, at the statutory rate, for all qualified programs in which they successfully participate, except for the programs in which they participated while ... in detention before the date" of sentencing) (emphasis added).

**Stevens v. Jacquez**, No. 3:23-CV-01482-AA, 2024 WL 3200546, at *4 (D. Or. June 25, 2024)[5]. Here, although petitioner asserts that "he was of good behavior, did not commit any disciplinary infractions, never refused to participate in any programs, and participated in programs and productive activities available to him," he is unable to show that he in fact "successfully participated." As in **Stevens**, the BOP had not yet conducted an assessment to determine the type and amount of programming appropriate for petitioner until he arrived at his designated facility, and as such petitioner could not, in fact,

---

[5] **Stevens** further found that the case was distinguishable from **Huihui v. Derr**, No. CV 22-00541 JAO-RT, 2023 WL 4086073, at *5 (D. Haw. June 20, 2023), in which the court ordered the BOP to recalculate petitioner's FSA time credits using the date he was initially transferred to a BOP facility.

9

successfully participate in programming. Accordingly, petitioner is not entitled to FSA time credit for the period prior to arriving at his designated facility, and the petition should be denied.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment [**Doc. 11**] be **GRANTED** and the petition [**Doc. 1**] be **DENIED** and **DISMISSED WITH PREJUDICE**.

The parties shall have **fourteen (14) days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is further directed to mail a copy of this Report and Recommendation to the petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

**DATED**:  November 20, 2024.

/s/ *James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE